UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,

        Plaintiff,

    v.

MARSHALL W. DUTY,

        Defendant.

Case No. 16-cr-40041-JPG

**UNDER SEAL**

## MEMORANDUM AND ORDER

This matter comes before the Court on defendant Marshall W. Duty's motion for reconsideration (Doc. 117) of the Court's April 2, 2020, denial (Doc. 116) of his amended motion for immediate compassionate release (Doc. 105) pursuant to the First Step Act of 2018, Pub. L. No. 115-391, § 603(b)(1), 132 Stat. 5194, 5239 (2018) (codified at 18 U.S.C. § 3582(c)(1)(A)).  The Government has responded (Doc. 123), and Duty has replied to that response (Doc. 124).  Duty has also filed two status reports (Docs. 118 & 120).

In its April 2, 2020, order (Doc. 116), the Court denied Duty's amended motion for immediate compassionate release, finding that, although he suffers from serious health conditions that may amount to extraordinary and compelling reasons for compassionate release, he remained a danger to the safety of others in the community.  The Court noted that its observations at Duty's sentencing hearing remain true—he was able to commit his second round of criminal drug offenses even in his fragile health condition, and he has a history of recidivism—there was no indication he would not continue to commit crimes if the Court ordered him released early.  The Court further found that the § 3553(a) factors noted at the sentencing hearing continued to apply:

The fact remains that Duty has been convicted on two separate occasions of

federal felony drug offenses that he committed despite his health problems, the second of which occurred in public housing.  The Court observed no sentencing disparity between Duty and other drug offenders.  It further noted Duty's numerous prior convictions that were not assessed criminal history points for sentencing guidelines purposes but which showed a disrespect for the law.  It commended Duty for receiving his GED on his first prison stint and recognized he was the victim of an addiction, but found that the 120-month sentence imposed was the appropriate sentence considering all the § 3553(a) factors.  Nothing has materially changed since Duty's sentencing with respect to the § 3553(a) factors.

It further found that the COVID-19 pandemic did not constitute an extraordinary and compelling reason for immediate compassionate release for Duty since, in prison, Duty has medical providers available to tend to his health needs, and the BOP is taking measures to prevent the spread of the disease within its prison facilities.  It further noted the danger of travel from FCI-Terminal Island, where Duty is housed, to Illinois would be dangerous during the pandemic.

Duty asks the Court to reconsider its April 2, 2020, order based on changed circumstances.  Specifically, Duty states he can mitigate the dangers of traveling cross-country by having his profession over-the-road driver son pick him up at FCI-Terminal Island to transport him home.  Additionally, since the Court's ruling, the incidence of COVID-19 in prisons has increased faster than outside the prison.  In fact, FCI-Terminal Island became a hotbed of COVID-19, with more than half of the inmates testing positive for the disease, including Duty.  Eight died from it but the vast majority recovered.  *See* Bureau of Prisons, Coronavirus, https://www.bop.gov/coronavirus/ (visited May 21, 2020).  In fact, Duty had to be sent to the emergency room at an outside hospital where he spent several days in treatment for his acute COVID-19 but became stable and discharged to the prison on April 23, 2020.  As of May 4, 2020, it appears he has recovered.  Finally, Duty submits a pleading in another class action civil case for declaratory and injunctive relief that centers on the COVID-19 risks at FCI-

2

Terminal Island and that catalogues and describes those dangers.

The Government objects to reconsideration of the Court's denial of immediate compassionate release. Specifically, it notes that Duty has not challenged the Court's finding that he continues to pose a danger to the safety of the community even in his fragile health condition. Additionally, it argues that before filing his original motion for compassionate release in August 2019, Duty had not exhausted his administrative remedies with respect to offering COVID-19-based evidence and argument as a basis for compassionate release, so he should not be able to raise that argument before the Court now.

The Court considers Duty's request to be governed by the law of the case doctrine. *See Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 571-72 (7th Cir. 2006). The law of the case is a discretionary doctrine that creates a presumption against reopening matters already decided in the same litigation and authorizes reconsideration only for a compelling reason such as a change in the law or a showing that the prior decision was clearly erroneous and would work manifest injustice. *United States v. Faulkner*, 885 F.3d 488, 496 (7th Cir.), *cert. denied sub nom. Sykes v. United States*, 139 S. Ct. 260 (2018), and *cert. denied,* 139 S. Ct. 388, 202 L. Ed. 2d 297 (2018).

Duty has not met that standard. There has been no relevant change in the law since the Court's prior decision. Duty has not shown that decision to be clearly erroneous and working manifest injustice and has not offered any other compelling reason to change the Court's prior decision. It is true that COVID-19 has hit FCI-Terminal Island—and Duty—hard, but he has weathered the storm. Nothing about his current physical condition or risk from COVID-19 causes the Court to change its balancing of the § 3553(a) factors, including its consideration of Duty's danger to the safety of others in the community in light of his history of disrespect for the

law and recidivism.  While Duty may be able to travel home more safely by getting a ride from

his son, he remains too dangerous for early release.[1]

    For these reasons, the Court **DENIES** Duty's motion for reconsideration (Doc. 117).

**IT IS SO ORDERED.**
**DATED:  May 22, 2020**

                                      s/ J. Phil Gilbert_____
                                      **J. PHIL GILBERT**
                                      **DISTRICT JUDGE**

---

[1] The Court declines to decide whether Duty's pre-COVID-19 request for an administrative remedy sufficiently exhausted his remedies for his current motion for reconsideration.  Arguably it does because his request for a remedy is based on the same health conditions as his current motion, although the factual circumstances are different.  However, in light of the Court's determination that Duty remains too dangerous to release, it declines to address the exhaustion question.